UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEANNINE MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:24 CV 377 CDP |
| | ) |
| WELLS FARGO COMPANY, | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM AND ORDER**

Plaintiff Jeannine Mitchell brings this action under Missouri's Whistleblower Protection Act (WPA), Mo. Rev. Stat. § 285.575, alleging that her employer, defendant Wells Fargo Company, terminated her employment in October 2023 in retaliation for reporting unlawful practice that deprived Wells Fargo clients of accumulated interest in their accounts.  In response to Wells Fargo's motion to dismiss, Mitchell seeks leave to amend her complaint to account for information not known at the time of initial filing.  Wells Fargo argues that Mitchell's proposed amended complaint continues to fail to state a claim under the WPA and that it should be dismissed as futile.[1]  For the reasons that follow, I will grant Mitchell leave to file her amended complaint.  I will deny as moot Wells Fargo's motion to dismiss directed to Mitchell's original complaint.

---

[1] Wells Fargo filed a motion to dismiss the proposed amended complaint.  I construed that motion as its opposition to Mitchell's motion for leave to amend.  (*See* Order, ECF 31.)

**Legal Standards**

Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), the Court has discretion to grant leave to amend a complaint and should freely do so "when justice so requires." Denial of leave to amend is appropriate in limited circumstances where the motion to amend was filed in bad faith, with dilatory motive, or with undue delay; where leave to amend would be unduly prejudicial to the opposing party; or where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). An amendment is futile if it cannot withstand a Rule 12(b)(6) motion to dismiss. *Hillesheim*, 897 F.3d at 955. Wells Fargo invokes Rule 12(b)(6) here and argues that Mitchell's proposed amended complaint fails to state a claim upon which relief can be granted – in other words, that the amendment is futile. My futility analysis is therefore guided by the legal standard that governs Rule 12(b)(6) motions to dismiss. *See Northland Parent Ass'n v. Excelsior Springs Sch. Dist. #40*, 571 F. Supp. 3d 1104, 1109 (W.D. Mo. 2021); *Gleich v. Bi-State Dev. Agency*, No. 4:22-CV-00619-SRC, 2022 WL 15415876, at *2 (E.D. Mo. Oct. 27, 2022).

Motion to Dismiss

For Mitchell's proposed amended complaint to survive Rule 12(b)(6)

scrutiny, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Legal conclusions couched as factual allegations are not taken as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 677-78. I must liberally construe the complaint and grant all reasonable inferences in Mitchell's favor. *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020).

The requirement of facial plausibility means that the factual content of the complaint's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678) (alteration in *Park Irmat*). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## The Proposed Amended Complaint

Mitchell worked at Wells Fargo from 1991 to her termination in October 2023. At the time of her termination, she was Team Leader for Cash Management in the Check Processing Department.

Mitchell alleges that she was informed of a new Wells Fargo pilot program whereby certain client funds were deposited into a Wells Fargo interest-bearing

- 3 -

account days prior to crediting the clients' accounts.  Mitchell avers that the program resulted in Wells Fargo retaining interest from client funds – interest which she believed rightfully belonged to the clients.  The clients had no knowledge of the program; nor did they consent to participating in it.

Believing that the Wells Fargo's program was unlawful, Mitchell reported her concerns to her immediate manager in June 2023, the Head of the Department of Cash Management in July 2023, another Wells Fargo manager in September 2023, and a Wells Fargo investigator.  On September 13, 2023, the day after she spoke to the other Wells Fargo manager, Mitchell was escorted from the building and placed on administrative leave.  After proceeding through a disciplinary process, Wells Fargo terminated Mitchell's employment effective October 1, 2023.

Mitchell claims that Wells Fargo terminated her employment because she blew the whistle on their unlawful conduct, in violation of the WPA.

## Discussion

Under the WPA, it is "an unlawful employment practice for an employer to discharge an individual defined as a protected person in this section because of that person's status as a protected person."  Mo. Rev. Stat. § 285.575.4.  The WPA defines a "protected person" as:

> an employee of an employer who has reported to the proper authorities an unlawful act of his or her employer; an employee of an employer who reports to his or her employer serious misconduct of the employer that violates a clear mandate of public policy as

>articulated in a constitutional provision, statute, or regulation promulgated under statute; or an employee of an employer who has refused to carry out a directive issued by his or her employer that if completed would be a violation of the law.

Mo. Rev. Stat. § 285.575.2(4). An employee is *not* a protected person, however, if "[t]he proper authority or person to whom the employee makes his or her report is the person whom the employee claims to have committed the unlawful act or violation of a clear mandate of public policy." Mo. Rev. Stat. § 285.575.2(4)(b).

The WPA also provides that an employee's discharge is "because of" their status as a protected person only when the employee's "status as a protected person was the motivating factor" for the discharge, Mo. Rev. Stat. § 285.575.2(1); that is, that "the employee's protected classification actually played a role in the adverse decision or action and had a determinative influence on the adverse decision or action." Mo. Rev. Stat. § 285.575.2(5).

Accordingly, the elements of a wrongful termination claim under the WPA are: 1) the employee was a protected person as defined by the statute; 2) the employer discharged the employee; and 3) the employee's status as a protected person was the motivating factor for the discharge. *See Steak N Shake Inc. v. White*, No. 4:18-CV-00072-SRC, 2020 WL 85172, at *10-11 (E.D. Mo. Jan. 7, 2020).

Wells Fargo argues that Mitchell was not a protected person under the statute and, even if so, her status as a protected person was not a motivating factor

- 5 -

in her termination.

Motivating Factor

Wells Fargo argues that Mitchell's bare assertion that she was terminated after making what she perceived to be a protected report of misconduct is insufficient to show the requisite causal connection between her activity and termination.

"A claim in violation of the WPA cannot be brought without alleging facts to show the reported activity was the motivating factor in the adverse employment decision." *Johnson v. TreeHouse Foods, Inc.*, No. 4:19-CV-00621-BCW, 2020 WL 13680496, at *2 (W.D. Mo. Feb. 20, 2020). While temporal proximity between protected activity and an adverse employment action is generally insufficient by itself to prove retaliation, it nevertheless can be evidence that the protected activity was a motivating factor in the adverse action. *Agnew v. St. Louis Cnty.*, 504 F. Supp. 3d 989, 1001 (E.D. Mo. 2020) (denying 12(b)(6) motion to dismiss) (citing *Skalsky v. Independent Sch. Dist. No. 743*, 772 F.3d 1126, 1131 (8th Cir. 2014)).

Here, Mitchell pleads temporal proximity in that she was escorted from the workplace and placed on administrative leave one day after she met with Wells Fargo management to discuss her concerns with the program, and her employment was terminated less than three weeks later. In addition to temporal proximity,

Mitchell provides additional facts that, when viewed in her favor, support a reasonable inference that her report of wrongful conduct was a motivating factor in the adverse employment action taken against her – specifically, that she had been employed at Wells Fargo for 32 years before being placed on leave and discharged after making her report; that she was Team Leader in her department; and that, before her disciplinary meeting, she asked for but was denied access to the Wells Fargo code of conduct and was not given a reason for being placed on administrative leave.

Accepting all factual allegations as true and giving Mitchell all reasonable inferences as I must under Rule 12(b)(6), I conclude that the proposed amended complaint contains sufficient facts to plausibly allege that Mitchell's reporting of misconduct was a motivating factor in her termination, thereby meeting the causation requirement to state a claim under the WPA.

Protected Person

An employee can be a "protected person" under the WPA if s/he meets one of three definitions: that s/he (1) "reported to the proper authorities an unlawful act of his or her employer;" (2) "report[ed] to his or her employer serious misconduct of the employer that violates a clear mandate of public policy as articulated in a constitutional provision, statute, or regulation promulgated under statute;" or (3) "refused to carry out a directive issued by his or her employer that

if completed would be a violation of the law." Mo. Rev. Stat. §§ 285.575.2(4), 285.575.4.  Wells Fargo argues that Mitchell does not meet any definition of a "protected person."  I disagree.  Mitchell's proposed amended complaint pleads sufficient facts plausibly showing that she meets both (1) and (2) above.

As to the second definition – that is, that Mitchell reported to her employer serious misconduct that violates a clear mandate of public policy, etc. – Mitchell alleges that Wells Fargo failed to disclose a material fact to its clients that it was withholding interest from their accounts; that Wells Fargo violated its fiduciary duty to its clients by withholding interest from their deposits; that Wells Fargo failed to act primarily on behalf of its clients by depriving them of investment income and interest earned on their deposits; and that Wells Fargo retained for itself the interest monies earned by its clients without the clients' consent or knowledge.  Mitchell avers that that conduct violated the public policy mandate of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1, *et seq.*

Mitchell's allegations are neither vague assertions nor mere citations to a statutory provision as Wells Fargo argues.  The alleged misconduct arguably falls within the parameters of the Investment Advisers Act – *see* § 80b-6 (unlawful for investment advisor to directly or indirectly engage in any transaction, practice, or course of business which operates as fraud or deceit upon a client); § 80b-18b (investment advisor shall take such steps to safeguard client assets) – and the

United States Supreme Court has recognized that the "fundamental purposes" of the Act include

> [t]he broad proscription against 'any * * * practice * * * which operates * * * as a fraud or deceit upon any client or prospective client'[;] a desire to preserve 'the personalized character of the services of investment advisers,' and to eliminate conflicts of interest between the investment adviser and the clients as safeguards both to 'unsophisticated investors' and to 'bona fide investment counsel.' The Investment Advisers Act of 1940 thus reflects a congressional recognition 'of the delicate fiduciary nature of an investment advisory relationship,' as well as a congressional intent to eliminate, or at least to expose, all conflicts of interest[.]

*SEC v. Capital Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 191-92 (1963) (footnotes omitted). *See also*, *e.g.*, *Kokesh v. SEC.*, 581 U.S. 455, 458 n.1 (2017) (Investment Advisers Act of 1940 "serves the 'fundamental purpose' of 'substitut[ing] a philosophy of full disclosure for the philosophy of *caveat emptor* and thus . . . achiev[ing] a high standard of business ethics in the securities industry.'") (quoting *Capital Gains Rsch. Bureau*, 375 U.S. at 186); *SEC v. Criterion Wealth Mgmt. Servs., Inc.*, 599 F. Supp. 3d 932, 947 (C.D. Cal. 2022) (violation of Investment Advisors Act includes breach of fiduciary duty to clients by making false and misleading statements or omissions of material fact to their clients); *Sullivan v. Chase Inv. Servs. of Bos., Inc.*, 434 F. Supp. 171, 183 (N.D. Cal. 1977) ("[T]he primary purpose of the Investment Advisers Act was to protect the investing public."). Mitchell has pleaded sufficient facts to support a plausible claim that she meets the second definition of a "protected person" under the WPA.

As to the first definition – that is, that Mitchell reported to the proper authorities an unlawful act of Wells Fargo – I disagree with Wells Fargo's assertion that the proposed amended complaint alleges that the persons to whom Mitchell reported the misconduct were the offenders themselves, which would remove Mitchell from protected-person status under the WPA. *See* Mo. Rev. Stat. § 285.575.2(4)(b). Mitchell alleges that the violative program was created by "Wells Fargo" and that she was instructed to execute the program in her work. She reported her concerns about the propriety of the program to her immediate manager, the head of her department, another Wells Fargo manager, and a Wells Fargo investigator. Mitchell does not allege that any of those persons were responsible for the creation or implementation of the program or that they were wrongdoers themselves. Mitchell has pleaded sufficient facts to support a plausible claim that she meets the first definition of a "protected person" under the WPA and is not subject to the exclusion under § 285.575.2(4)(b).

Because Mitchell's proposed amended complaint contains sufficient factual matter, accepted as true, to state a claim for relief under the WPA that is plausible on its face, the amended complaint is not futile. I will therefore grant Mitchell leave to file the amended complaint. Wells Fargo's motion to dismiss Mitchell's original complaint is moot.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff Jeannine Mitchell's Motion for Leave to File Amended Complaint [24] is **GRANTED.  The Clerk of Court shall docket the First Amended Complaint (ECF 25) as being filed as of the date of this Order.**

**IT IS FURTHER ORDERED** that defendant Wells Fargo Company's Motion to Dismiss [8] directed to plaintiff's original complaint is **DENIED as moot.**

Defendant shall answer plaintiff's First Amended Complaint within the time prescribed by the Federal Rules of Civil Procedure.  The case will be set for a Rule 16 Scheduling Conference by separate Order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of July, 2024.